IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRIAN C. DAVISON,                    )
                                     )
     Plaintiff,                      )
                                     )
          v.                         )     1:16cv932 (JCC/IDD)
                                     )
LOUDOUN COUNTY BOARD OF              )
SUPERVISORS, et al.,                 )
                                     )
     Defendants.                     )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion
to Dismiss [Dkt. 3].  For the reasons that follow, the Court
will deny Defendants' Motion with respect to Plaintiff's First
Amendment and Due Process claims against Defendant Board of
Supervisors of Loudoun County, and will grant the Motion in all
other respects.

**I. Background**

The following allegations of fact set forth in
Plaintiff's Complaint are taken as true for purposes of the
present Motion.  *See E.I. du Pont de Nemours & Co. v. Kolon
Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Defendant Loudoun County Board of Supervisors ("the
Board") is Loudoun County, Virginia's local governing body.
Compl. [Dkt. 1] ¶ 2.  On July 15, 2016, the Board's standing

Transportation and Land Use Committee held a public meeting. *Id.* ¶ 8.  Present at that meeting were Defendants Phyllis Randall, Ron Meyer, and Geary Higgins — each a "supervisor in the Defendant Loudoun County [Board of Supervisors]." *Id.* ¶¶ 4,6-8.  Defendant Tony Buffington, also a supervisor elected to the Board, *see id.* ¶ 5, did not attend the meeting.  *See id.* ¶ 8.[1]

Notwithstanding his absence, Defendant Buffington began sending text messages to Defendants Randall, Meyer, and Higgins during the meeting.  *See id.* ¶¶ 9-10.  These messages urged the Board members present to vote against a specific land use application under discussion.  *See id.*

Approximately 40 minutes after Defendant Buffington began sending text messages to his colleagues, counsel for the land use applicant inquired whether Defendant Buffington was participating in the meeting via text message.  *Id.* ¶ 11.  The applicant's counsel argued that this would violate Virginia's Freedom of Information Act, Va. Code § 2.2-3700, *et seq.*  Compl. [Dkt. 1] ¶ 11.  Defendants Randall, Meyer, and Higgins admitted to receiving text messages from Defendant Buffington and read the messages into the record.  *Id.* ¶ 12.

---

[1]     Two other members of the Board — supervisors Suzanne Volpe and Kristen Umstattd — were present at the meeting but have not been named in this suit.  *See id.* ¶ 8.

On July 19, 2016, a post appeared on the official Facebook page of the Loudoun County Government. *Id.* ¶ 13. The post read: "#Loudoun County Attorney Leo Rogers has determined that text messages sent and receive [sic] during a Board of Supervisors committee meeting did not violate the Virginia Freedom of Information Act." *Id.; see also* Compl. Exh. 3 [Dkt. 1-3]. The post included a link to a press release stating as much hosted "on the Loudoun County government's website." Compl. [Dkt. 1] ¶ 13.

Plaintiff Brian C. Davison is a resident of Loudoun County, Virginia, who takes "an interest in rules of ethics for public officials." *Id.* ¶ 1. Shortly after the post appeared, Plaintiff commented on it using the screen name "Virginia SGP." *Id.* ¶ 14. Plaintiff's comment "related to the alleged FOIA violation." *Id.* It appears that Plaintiff's comment was critical of the Board, although the comment is not part of the record now before the Court.

Plaintiff's comment was "quickly hidden" by someone operating the Board's Facebook page. *Id.* ¶ 15. One attempting to view the comment would therefore be able to see that someone had commented on the original post, but would not be able to read the comment itself. *See id.*

Upon discovering that his initial comment had disappeared, Plaintiff commented again noting that the

3

censorship of his previous comment implicated his First Amendment and Due Process rights.  *See id*. ¶ 16; *see also* Compl. Exh. 3 [Dkt. 1-3].  Plaintiff's second comment was also "hidden and/or deleted" within minutes.  Compl. [Dkt. 1] ¶ 17.

This prompted a third comment in which Plaintiff again invoked his constitutional rights, referenced a lawsuit he had filed based upon similar circumstances, *see Davison v. Plowman*, __ F. Supp. 3d. __, No. 1:16-CV-0180, 2016 WL 3167394 (E.D. Va. June 6, 2016), and levied allegations of corruption at the Board.  *See* Compl. Exh. 7 [Dkt. 1-7].  Plaintiff then captured an image of this third comment and posted it along with a fourth comment referencing the possibility of legal action against the Board.  *See* Compl. [Dkt. 1] ¶ 19; Compl. Exh. 8 [Dkt. 1-8]. Within hours, Plaintiff discovered that his fourth comment had been "deleted and/or hidden" as well. *See* Compl. [Dkt. 1] ¶ 19.

Plaintiff emailed the Board — including each individual Defendant supervisor — to report what had happened and ask that his comments be restored.  *See id*. ¶ 19; Compl. Exhs. 14-18 [Dkt. 1-14, 1-15, 1-16, 1-17, 1-18].  Plaintiff received no substantive response.  *See* Compl. [Dkt. 1] ¶¶ 24-26.

On July 20, 2016, Plaintiff filed suit *pro se* against the Board and individual Board members Randall, Buffington, Meyer, and Higgins.  Plaintiff also named as a defendant Leo Rogers, county attorney to the Board, who Plaintiff alleges is

4

"responsible for . . . providing opinions and/or policy on Loudoun County's social media policy." *Id.* ¶ 3. Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights to free speech, due process, and equal protection, as well as the Virginia Freedom of Information Act.

Defendants now move to dismiss this case pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(6) and (d).

## II. Legal Standard

As an initial matter, the Court notes that Defendants' pleadings fail to distinguish between Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Indeed, Defendants go so far as to reference "Fed. R. Civ. P. 12(b)(1)(6)" in the titles and introductory paragraphs of their pleadings. Defendants cite the rules interchangeably throughout their Motion and supporting Memorandum. It therefore falls to the Court to determine the proper standard under which to evaluate Defendants' Motion.

Defendants challenge the legal sufficiency of Plaintiff's claims, not the Court's power to hear them. Such arguments are only properly evaluated under Rule 12(b)(1) when a movant contends that the plaintiff's claims are (1) brought solely for the purpose of obtaining federal jurisdiction over state law claims or (2) wholly insubstantial. *See Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452-53 (4th Cir. 2012). Defendants do not clearly advance either position.

Defendants' Motion is therefore properly addressed under Rule 12(b)(6).[2]

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted). Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). "A court has wide discretion to exclude matters outside of the pleadings" in evaluating such a motion. *Norfolk Fed'n of Bus. Districts v. Dep't of Hous. & Urban Dev.*, 932 F. Supp. 730, 736 (E.D. Va.), *aff'd sub nom. Norfolk Fed'n of Bus. Districts v. City of Norfolk*, 103 F.3d 119 (4th Cir. 1996). If, however, a defendant proffers evidence beyond the complaint, the Court may treat the filing as a motion for summary judgment under

---

[2]    To the extent Defendants ask that the Court address their Motion under Rule 12(b)(1) so as to look beyond the Complaint to "jurisdictional" facts, *see* Mem. in Supp. of Mot. to Dismiss [Dkt. 4] at 8, the Court finds that it would not be appropriate to do so at this stage of the proceedings. *See 24th Senatorial Dist. Republican Comm. v. Alcorn*, 820 F.3d 624, 629 (4th Cir. 2016) ("If . . . the jurisdictional facts are intertwined with the facts central to the merits of the complaint, 'a presumption of truthfulness should attach to the plaintiff's allegations' . . . [a]nd 'the court should resolve the relevant factual disputes only after appropriate discovery.'") (quoting *Rich v. United States*, 811 F.3d 140, 145 (4th Cir.2015)).

Federal Rules of Civil Procedure (12)(d) and 56.  *See Goldfarb*, 791 F.3d at 508.

In evaluating Defendants' Motion, the Court is mindful that Plaintiff is proceeding in this matter *pro se*.  A "document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. Analysis

#### A. Defendants' Affidavits and Exhibits

Before reaching the merits of Defendants' Motion, the Court must first determine what evidence it may properly consider.  Defendants' Motion is accompanied by six affidavits from Loudoun County employees who purport to be the administrators of the County's Facebook page.  Defendants have also submitted ten exhibits in connection with their motion. Some of these are duplicative of exhibits attached to Plaintiff's Complaint.  Others, however, are materials — communications and images of the County's Facebook page — that were clearly not available to Plaintiff when he filed suit, either because Plaintiff had no prior opportunity to view them, or because they postdate the filing of Plaintiff's Complaint.

As stated above, courts generally may not look beyond the well-plead allegations of fact set forth in the complaint when evaluating a Rule 12(b)(6) motion. *See Goldfarb*, 791 F.3d at 508. Defendants contend that two exceptions to this rule permit the Court to consider the extraneous materials submitted with their Motion.

First, Defendants argue that the Court may consider the exhibits and affidavits submitted with their Motion to the extent that these materials are referenced in Plaintiff's Complaint. *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 4] at 9. But while it is true that courts evaluating a Rule 12(b)(6) motion may consider documents explicitly or necessarily incorporated by reference into a plaintiff's complaint, *see, e.g.*, *Norfolk Fed'n of Bus. Districts*, 932 F. Supp. at 736, that is of little help to Defendants in this instance. Many of the documents submitted with Defendants' Motion — for example, the affidavits from County employees and Defendants' communications with third parties — are plainly not referenced in Plaintiff's complaint at all.

Moreover, Defendants' exhibits depicting portions of the County's Facebook page beyond those expressly relied upon by Plaintiff are not incorporated by reference into Plaintiff's Complaint. The Fourth Circuit has admonished that the circumstances under which "a court may rely on extrinsic

8

materials to determine a motion to dismiss" are "narrow."
*Goldfarb*, 791 F.3d at 508.  Courts generally may not consider
extraneous materials, even when explicitly referenced or quoted
in a complaint, unless the plaintiff's claims "turn on" or are
"otherwise based on" them. *Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159, 166 (4th Cir. 2016).  To hold that Plaintiff's
Complaint incorporates portions of the County's Facebook page
beyond those upon which his claims are based would overstep the
bounds of this narrow exception.

Indeed, many of Defendants' exhibits depict portions
of the County's Facebook page that would not have been available
to Plaintiff when he filed suit, either because they were not
publicly available, or because they were posted after Plaintiff
filed suit.  Far from relying upon those portions of the website
when filing suit, Plaintiff could not have been aware of them.
This "lack of notice to the plaintiff" undermines the "rationale
underlying th[e] exception" Defendants invoke. *Am. Chiropractic
Ass'n v. Trigon Healthcare*, Inc., 367 F.3d 212, 234 (4th Cir.
2004) (quoting *In re Burlington Coat Factory Securities
Litigation*, 114 F.3d 1410, 1426 (3d Cir.1997).

To the extent that the materials submitted with
Defendants' Motion are in fact referenced in Plaintiff's
Complaint, they are duplicative of exhibits already appended to
the Complaint.  As such, they are of little aid to the Court.

9

In light of the above, the Court declines to consider
Defendants' exhibits and affidavits as incorporated by reference
into Plaintiff's Complaint.

Defendants argue further that the Court may consider
the content of their exhibits and affidavits as "'capable of
accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned, and thus properly
subject to judicial notice under Fed. R. Evid. 201.'"  Mem. in
Supp. of Mot. to Dismiss [Dkt. 4] at 9 (quoting *Katyle v. Penn
Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011)).  It does
not appear, however, that Defendants' submissions are proper
subjects of judicial notice.

Courts may take judicial notice of "matters of public
record."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180
(4th Cir. 2009); *see also Goldfarb*, 791 F.3d at 508.
Defendants' affidavits, emails, and screenshots of the County's
Facebook page are not matters of public record.  Among
Defendants' submissions, only Loudoun County's Social Media
Comments Policy arguably merits judicial notice.  *See* Mem. in
Supp. of Mot. to Dismiss Exh. 3 [Dkt. 4-9].  But this is already
an exhibit appended to Plaintiff's Complaint.  *See* Compl. Exh.
11 [Dkt. 1-11].  Accordingly, the Court declines to take
judicial notice of the affidavits and exhibits appended to
Defendants' Motion.  *Cf. Waugh Chapel S., LLC v. United Food &*

*Commercial Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013) ("judicial notice" should not "be used as an expedient for courts to consider matters beyond the pleadings and thereby upset the procedural rights of litigants to present evidence on disputed matters").

Finally, Defendants argue that if the Court is unable to consider their affidavits and exhibits under Rule 12(b)(6), the Court should convert their filing to a motion for summary judgment pursuant to Rule 12(d).  The Fourth Circuit, however, has admonished that "[s]uch conversion is not appropriate where the parties have not had an opportunity for reasonable discovery."  *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448. Discovery in this matter has not yet commenced, and Plaintiff rightly notes in his Opposition that he has not had an opportunity to test the claims Defendants support by reference to their affidavits and exhibits.  As such, the Court must decline to consider Defendants' Motion under Rule 12(d).[3]

---

[3]     The Court notes that even were it to convert Defendants' Motion pursuant to Rule 12(d), the Court would still find that there exist material issues of fact precluding the entry of summary judgment in Defendants' favor.  Relying on their affidavits and exhibits, Defendants claim that County employees who have access to the Loudoun County Facebook page did not delete or hide Plaintiff's comments, and that a technical issue may be at fault.  *See* Affs. [Dkts. 4-1, 4-2, 4-3, 4-4, 4-5, 4-6].  This resolves neither what actually happened to the comments, nor what role, if any, Defendants played.

**B. Defendants' Arguments**

Having determined that the Court may not properly consider the affidavits and exhibits submitted with Defendants' Motion, the Court now turns to the portions of the Motion that do not rely upon extrinsic evidence. The Court notes, however, that two issues raised in Defendants' original Motion no longer require the Court's attention.

First, Plaintiff represents in his Opposition that he has "decided to abandon Rogers as a Defendant and simply not serve him." Opp. [Dkt. 6] at 8. In light of Plaintiff's stated intent to abandon his claims against Defendant Rogers, the Court will grant Defendants' Motion with respect to all claims asserted against that Defendant.

Second, Defendants' Reply Brief suggests that they no longer intend to press their qualified immunity defense. Whether or not they intend to do so, however, that defense is clearly inapplicable. Plaintiff has sued Defendants in their official capacities. The defense of qualified immunity "is not available in an official-capacity suit brought against a government entity or a government officer as that entity's agent." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006).

## 1. Municipal Liability

As to the issues that remain, Defendants' most substantial argument is that neither the Board, nor its individual members, are proper defendants to this action.  In particular, Defendants argue that Plaintiff is attempting to hold Defendants liable under a theory of *respondeat superior* — a form of liability that the Supreme Court has rejected in the context of section 1983 litigation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

Plaintiff alleges that Defendants "either personally made the decision to undertake the acts against [Plaintiff] or, when made aware of those acts as head of the office, personally adopted and ratified those acts by refusing to remediate the constitutional violation."  *Id*. ¶ 35.  Plaintiff has since clarified that he does not "allege[ ] that any individual board member deleted [his] comments," but rather that the Board as a whole is responsible for the actions of whoever did.  Opp. [Dkt. 6] at 9.

Based on Plaintiff's representations, the Court agrees that the individual Board members are not appropriate defendants to this action.  Only those with final decision making authority can be liable under a theory of municipal liability.  *See Ashby v. Isle of Wight Cty. Sch. Bd.*, 354 F. Supp. 2d 616, 625 (E.D. Va. 2004).  Plaintiff alleges that the Board ratified the

decision of a subordinate.  It does not appear that individual Board members are authorized to take such action on behalf of the Board as a whole.  *See* Va. Code § 15.2-400, *et seq*. Accordingly, the Court will dismiss Plaintiff's claims against Defendants Randall, Buffington, Meyer, and Higgins.

Whether the Board itself is a proper defendant is a close question.  The issues to be resolved, however, are issues of fact rather than of law, and so are properly addressed after some discovery has taken place.

Defendants acknowledge that the Board is municipal body subject to suit under section 1983.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 4] at 16; *Monell*, 436 U.S. at 690. Moreover, the Board is the ultimate decision making authority with respect to County policy, to which County employees are generally answerable.  *See* Va. Code §§ 15.2-403(A); 15.2-404(A).

A municipal body such as the Board may be responsible for the actions of a subordinate if it ratifies them.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."); *see also Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 196 (4th Cir. 1994); *Ashby*, 354 F. Supp. 2d at 627.  To show ratification, Plaintiff must demonstrate that the Board was aware of its subordinate's

14

action and affirmatively approved both the act and its
rationale.  *See Ashby*, 354 F. Supp. 2d at 627.  Whether
ratification has taken place is an issue of fact.  *See, e.g.*,
*Christie v. Iopa*, 176 F.3d 1231, 1238–39 (9th Cir. 1999)
("Ordinarily, ratification is a question for the jury.").

Viewing the allegations of the Complaint in the light
most favorable to Plaintiff, and taking into account the relaxed
pleading standard for *pro se* litigants, *See Estelle*, 429 U.S. at
106, Plaintiff has plausibly alleged that the Board ratified the
actions of its subordinate.  Plaintiff asserts that his comments
were deleted by a County employee with access to the County's
Facebook page.  *See* Compl. [Dkt. 1] ¶¶ 15, 31, 35.  Plaintiff
further alleges that the Board knew of the actions of its
subordinate as a result of Plaintiff's emails to the board.  *See*
Compl. [Dkt. 1] ¶¶ 22-26.  Moreover, Plaintiff alleges that his
comments were removed specifically because they were critical of
the Board, and that at least one member of the Board has
previously dealt with critical comments in a similar manner.
*See id*. ¶¶ 14, 31, 33.[4]  While it remains to be seen whether
Plaintiff can prove that the Board did indeed ratify a

---

[4]      The Court notes that mere acquiescence is not
sufficient to demonstrate ratification. *See Ashby*, 354 F. Supp.
2d at 627. Accordingly, reading Plaintiff's Complaint in the
light most favorable to Plaintiff, the Court construes
Plaintiff's allegation that the Board "refus[ed] to remediate
the constitutional violation," *see* Compl. [Dkt. 1] ¶ 35, as
involving some affirmative act of approval.

subordinate's decision to remove his comments, it would be
improper to deprive Plaintiff of the opportunity to make that
showing at this stage in the proceedings.

### 2. Plaintiff's First Amendment Claim

Moving on to Plaintiff's claim under the First
Amendment, the Court finds that the claim should be permitted to
proceed against the Board.

Defendants concede that in adopting a Social Media
Comments Policy, *see* Compl. Exh. 11 [Dkt. 1-11], the County
designated its Facebook page a limited public forum.  *See* Mem.
in Supp. of Mot. to Dismiss [Dkt. 4] at 13-14; *see also*
*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S.
819, 830 (1995) (a state policy facilitating speech creates a
"metaphysical" forum).  Once opened, the public may utilize a
limited public forum to the extent consistent with the
restrictions placed upon it by the state.  *See id*. at 829; *see*
*also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S.
37, 71 n.7 (1983) (a limited public forum is "created for a
limited purpose such as use by certain groups . . . or for the
discussion of certain subjects.").  Plaintiff's right to comment
on the County's Facebook page was therefore bounded by the terms
of the County's Social Media Comments Policy.

The Policy states that "the purpose of Loudoun County
social media sites is to present matters of public interest in

16

Loudoun County," and provides that visitors are "encourage[d] to submit questions, comments and concerns."  *See* Compl. Exh. 11 [Dkt. 1-11].  The Policy states further that "the county reserves the right to delete submissions" that violate enumerated rules, such as comments that include "vulgar language" or "spam."  *Id*.

Defendants do not allege that Plaintiff's comments violated any particular rule.  Rather, Defendants appear to argue that because the County reserved the right to moderate comments, the removal of Plaintiff's comments did not implicate the First Amendment.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 4] at 14, 16.

That is not so. "Once it has opened a limited forum . . . the State must respect the lawful boundaries it has itself set." *Rosenberger*, 515 U.S. at 829.  This rule applies as much to Defendants' Facebook page as to any other limited public forum.  *See Bland v. Roberts*, 730 F.3d 368, 386 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (noting that speech on Facebook is subject to the same First Amendment protections as speech in any other context).

Defendants' Policy "encourage[s]" visitors to the County's Facebook page "to submit questions, comments and concerns" regarding "matters of public interest in Loudoun County," and provides that only comments violating certain

17

enumerated rules will be removed.  Compl. Exh. 11 [Dkt. 1-11].

Therefore, unless Plaintiff's comments pertained to other than

"matters of public interest in Loudoun County" or violated an

enumerated rule, Plaintiff was entitled to post them on the

County's Facebook page.  Plaintiff alleges that notwithstanding

this policy, a County employee deleted his comments because they

were critical of the Board, and alleges further that the Board

ratified that act.  *See* Compl. [Dkt. 1] ¶ 31.  The County's

Social Media Comments Policy does not permit the removal of

comments on that basis. *See* Compl. Exh. 11 [Dkt. 1-11].

Defendants therefore fail to square their alleged

actions with "the lawful boundaries [the County] has itself set"

with respect to its Facebook page.  *Rosenberger*, 515 U.S. at

829.  Having adopted the Social Media Comments Policy, the

County government is bound to abide by its terms.  Plaintiff has

plausibly alleged that the Board failed to do so.  The Court

will therefore permit Plaintiff's First Amendment claim to

proceed against the Board.[5]

---

[5]     Defendants also argue at considerable length that
Defendant Randall did not violate Plaintiff's First Amendment
rights by deleting comments Plaintiff made on her own Facebook
page.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 4] at 14-16.
But that incident, while mentioned in passing in Plaintiff's
Complaint, is neither the subject of this suit, nor particularly
relevant to the instant Motion.

### 3. Plaintiff's Due Process Claim

The Court likewise finds that Plaintiff's Due Process claim should be permitted to proceed against the Board.

Plaintiff alleges that Defendants violated the Due Process clause of the Fourteenth Amendment by abridging Plaintiff's freedom of speech without notice or a chance to be heard.  *See* Compl. [Dkt. 1] ¶¶ 43-45.  Defendants move to dismiss this claim, arguing — in a brief and conclusory paragraph — that no such right exists under the Due Process clause.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt. 4] at 14 (Plaintiff does not have "a separate, independent due process claim based on anyone's failure to give him notice and an opportunity to be heard <u>before</u> his free speech rights were allegedly violated.")(emphasis in original).

The Due Process clause does, however, embrace such a right.  "When a State would directly impinge upon interests in free speech or free press, [the Supreme] Court has on occasion held that opportunity for a fair adversary hearing must precede the action, whether or not the speech or press interest is clearly protected under substantive First Amendment standards." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 590 n.14 (1972); *see also Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668, 2016 WL 767986, at *11 (E.D.N.Y. Feb. 26, 2016) ("[T]o the extent that plaintiff alleges that the defendant denied him of

19

[sic] due process by depriving him of his First Amendment rights without sufficient process . . . such a claim can survive the defendant's motion to dismiss."); *Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 295-96 (D. Vt. 2013) (declining to dismiss a procedural due process claim "assert[ing] the [defendant], by issuing [a] notice against trespass, deprived [the plaintiff] of First Amendment rights without sufficient process"); *Rubin v. Ikenberry*, 933 F. Supp. 1425, 1437 (C.D. Ill. 1996) ("liberty interests [in free speech] require a fair adversary hearing").

While Defendants may argue that the particular circumstances of this case did not warrant additional process, Defendants have not made such an argument.  The Court declines to supply it for them.  Because the argument Defendants have put forward is contrary to law, the Court will deny Defendants' Motion with respect to Plaintiff's Due Process claim.

### 4. Plaintiff's Equal Protection Claim

The Court agrees with Defendants, however, that Plaintiff has failed to state a claim under the Fourteenth Amendment's Equal Protection clause.  In support of this claim, Plaintiff alleges only that Defendants deleted his comments — at least some of which complied with the County's Social Media Comments Policy — while permitting certain noncompliant comments

to remain on the County's Facebook page.  *See* Compl. [Dkt. 1] ¶¶ 43-45.

    As an initial matter, the Court notes that Plaintiff's claim is plead in the conditional.  Plaintiff takes the position that Defendants will violate the Equal Protection clause only "[i]f Defendants claim [Plaintiff's] comments were removed because" some included links.  *See* Compl. [Dkt. 1] ¶ 45; Opp [Dkt. 6] at 14.  Plaintiff's equal protection claim is less a claim for relief than a counterargument.

    Regardless, "[t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated."  *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001).  As Defendants note, Plaintiff's allegations do not tend to show that he and other commenters were "in all relevant respects alike."  *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992).  Indeed, Plaintiff highlights only differences between himself and the other commenters.  Plaintiff's allegations are therefore legally insufficient to state an equal protection claim.  In light of the above, the Court will dismiss Plaintiff's claim under the Fourteenth Amendment's Equal Protection clause.

### 5. Plaintiff's Virginia Freedom of Information Act Claim

Finally, Defendants contend that Plaintiff's claim under the Virginia Freedom of Information Act must be dismissed because the Act provides for enforcement only through an action brought in "[Virginia] general district court or circuit court." Va. Code § 2.2-3713.  The Court notes that another federal court in Virginia has embraced this construction of the statute.  *See Elder v. City of Danville, VA*, No. 4:13-CV-00047, 2013 WL 6524651, at *4 (W.D. Va. Dec. 12, 2013); *Rutledge v. Town of Chatham*, No. 4:10-cv-00035, 2010 WL 3835662, at *3 (W.D. Va. Sept. 30, 2010), *aff'd sub nom. Rutledge v. Roach*, 414 F. App'x 568 (4th Cir. 2011).

Be that as it may, the Court is not convinced that this provision confers exclusive jurisdiction on Virginia courts.  Federal courts in Virginia regularly entertain pendant state law claims under at least one other statute that employs virtually identical language.  *See* Va. Code § 2.2-3903 (Virginia Human Rights Act (VHRA) permits aggrieved employees to "bring an action in a general district or circuit court"); *Rose-Stanley v. Virginia*, No. 2:15-cv-00007, 2015 WL 6756910, at *4 (W.D. Va. Nov. 5, 2015) (entertaining a VHRA claim); *Morgan v. Rowe Materials*, LLC, No. CIV.A. 3:08CV576, 2009 WL 1321514, at *4 (E.D. Va. May 11, 2009) (same).  Indeed, it would be unusual for

a state statute to explicitly confer jurisdiction on federal courts.  No such grant of jurisdiction is generally required for a federal court to entertain a pendant state law claim.

The Court need not reach the issue, however, because it is clear that Plaintiff's claim must be dismissed on sovereign immunity grounds.  Eleventh Amendment sovereign immunity is jurisdictional in nature.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The Fourth Circuit has held that "because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even *sua sponte*." *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014) (quoting *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir.1997)).  Although Defendants do not raise the issue, the Court finds it appropriate to do so of its own accord.

Sovereign immunity bars federal courts from entertaining claims arising under state law and brought against state officials.  *See Pennhurst*, 465 U.S. at 106.  That bar extends to claims brought under the Virginia Freedom of Information Act.  *See Parkridge 6, LLC v. U.S. Dep't of Transp.*, 420 F. App'x 265, 268 (4th Cir. 2011).  As such, the Court must dismiss Plaintiff's Virginia Freedom of Information Act claim.

**IV. Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion in part.  Counts III and IV of Plaintiff's Complaint will be dismissed with prejudice.  Counts I and II will be dismissed as to Defendants Rogers, Randall, Buffington, Meyer, and Higgins.  The Motion is denied to the extent that Plaintiff may continue to pursue Counts I and II against Defendant Board of Supervisors of Loudoun County.

An appropriate order shall issue.


                              /s/
September 14, 2016            James C. Cacheris
Alexandria, Virginia     UNITED STATES DISTRICT COURT JUDGE