IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRIAN C. DAVISON,                    )
                                     )
        Plaintiff,                   )
                                     )
              v.                     )     1:16cv932 (JCC/IDD)
                                     )
LOUDOUN COUNTY BOARD OF              )
SUPERVISORS, et al.,                 )
                                     )
        Defendants.                  )

## M E M O R A N D U M   O P I N I O N

        Defendant Phyllis Randall, Chair of the Loudoun County
Board of Supervisors, blocked Plaintiff Brian Davison from what
Plaintiff claims is her official County Facebook page.
Plaintiff alleges that this violated his First Amendment and Due
Process rights.  Defendant Randall has moved to dismiss
Plaintiff's claims against her [Dkt. 35], and Plaintiff has in
turn moved for summary judgment on those claims [Dkt. 39].  For
the reasons that follow, the Court will deny both Motions.

### I. Background

        A detailed discussion of the events giving rise to
this case can be found in the Court's Memorandum Opinion [Dkt.
11] granting in part and denying in part a previous motion to
dismiss.  As such, the Court repeats here only what is germane
to its rulings on the present Motions.

Plaintiff is a resident of Loudoun County, Virginia, who takes "an interest in rules of ethics for public officials." Compl. [Dkt. 1] ¶ 1.  He filed suit against the Loudoun County Board of Supervisors and its individual members after the Board allegedly ratified a subordinate's decision to delete his comments from the Board's official Facebook page.

Plaintiff's original Complaint referenced a previous incident during which Defendant Randall allegedly blocked Plaintiff from commenting on her official Facebook page.  *See id*. ¶¶ 24, 33.  That incident, however, was not the subject of any of Plaintiff's claims.

All Defendants – including Defendant Randall – moved to dismiss Plaintiff's original Complaint.  In a Memorandum Opinion, the Court granted that Motion in part and denied it in part.  As relevant here, the Court dismissed Plaintiff's claims against the individual members of the Loudoun County Board of Supervisors, but permitted Plaintiff's First Amendment and Due Process claims to proceed against the Board itself.  In doing so, the Court found Plaintiff had plausibly alleged that Loudoun County's Social Media Comments Policy, *see* Compl. Exh. 11 [Dkt. 1-11], serves to designate the Board's official Facebook page as a limited public forum under the First Amendment.

Plaintiff then filed an Amended Complaint [Dkt. 33] adding claims against Defendant Randall based on the incident

2

mentioned in Plaintiff's original Complaint.  To wit, Plaintiff alleges that Defendant Randall utilizes an official Facebook page in connection with her duties as Chair of the Loudoun County Board of Supervisors.  *See* Am. Compl. [Dkt. 33] ¶¶ 5-6. He claims that Defendant Randall uses her Facebook page to communicate with her constituents, and through it "solicit[s] and allow[s] public comments and discussions."  *See id*. ¶¶ 5-6, 9.  He further contends that, as an official County social media website, the County's Social Media Comments Policy applies to Defendant Randall's Facebook page.  *See id*. ¶¶ 1, 2, 10; Compl. [Dkt. 1] ¶¶ 21, 29-30.

Plaintiff claims that on February 3, 2016, Defendant Randall blocked him from posting comments to her official Facebook page.  *See* Am. Compl. [Dkt. 33] ¶ 15.  She allegedly did so because Plaintiff had made "comments critical of either Randall's actions or those of other government officials of Virginia."  *Id*.  Defendant Randall later acknowledged that she had blocked Plaintiff from her Facebook page.  *See id*. ¶ 17. Plaintiff argues that this violated his First Amendment and Due Process rights.

On November 17, 2016, Defendant Randall filed a Motion to Dismiss Plaintiff's claims against her [Dkt. 35].  Plaintiff subsequently filed a Motion for Partial Summary Judgment [Dkt. 39] with respect to his new claims.

## II. Legal Standard

"Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir.2003)). An unresolved issue of fact precludes summary judgment only if it is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on that issue. *Id.* at 248. It is material if it "might affect the outcome of the suit under the governing law." *Id.* "In the end, the question posed by a summary judgment motion is whether the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Lee v. Bevington*, 647 F. App'x 275 (4th Cir. 2016) (quoting *Anderson*, 477 U.S. at 252).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). Generally, the Court may

4

not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). "A court has wide discretion to exclude matters outside of the pleadings" in evaluating such a motion. *Norfolk Fed'n of Bus. Districts v. Dep't of Hous. & Urban Dev.*, 932 F. Supp. 730, 736 (E.D. Va.), *aff'd sub nom. Norfolk Fed'n of Bus. Districts v. City of Norfolk*, 103 F.3d 119 (4th Cir. 1996).

The Court is mindful that Plaintiff is proceeding in this matter *pro se*. A "document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. Analysis

#### A. Plaintiff's Motion for Partial Summary Judgment

Turning first to Plaintiff's Motion for Partial Summary Judgment [Dkt. 39], the Court notes that the Motion does not cite to any evidence of record. Indeed, it does not appear that there is, at this point, any record to speak of in this case. Plaintiff amended his Complaint on November 3, 2016, to include for the first time the claims that are the subject of the instant Motions. Defendant Randall has not yet filed an

answer to the Amended Complaint and no discovery has taken place.

Instead of record evidence, Plaintiff cites to the allegations of his own Amended Complaint.[1]  Those allegations do not establish a factual basis for summary judgment.  As Defendant notes, many of Plaintiff's allegations are disputed and, at this point, remain only allegations.  Material issues of fact – for example, who maintains Defendant Randall's Facebook page and for what purpose – are left unsettled on the record now before the Court.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion," and identifying the evidence "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Because Plaintiff's Motion is supported by mere allegations, the Court finds that Plaintiff has not met his initial evidentiary burden.  His Motion must therefore be denied.

------

[1]     Plaintiff's Motion also occasionally cites "Ex 24." The exhibit in question, however, was not submitted to the Court prior to the hearing on Plaintiff's Motion.  As such, Defendant Randall had no opportunity to address it.  The exhibit appears to be an image of Defendant Randall's Facebook page – one including less detail than the image already appended to Plaintiff's Complaint.  *See* Compl. Exh. 18 [Dkt. 1-18].  It is not clear that the exhibit is properly before the Court on the present Motions, but even assuming it is, the image does not warrant summary judgment standing alone.

The Court notes that both parties submitted Affidavits [Dkts. 50, 52] in connection with Plaintiff's Motion.  Both, however, did so after the close of briefing, and on the eve of the hearing on this matter.  Neither party had an opportunity to meaningfully address the allegations included in the other's Affidavit. Neither party makes any excuse for their late filing. The Court therefore declines to consider the Affidavits in ruling on Plaintiff's Motion.

### B. Defendant Randall's Motion to Dismiss

#### 1. Estoppel

Turning to Defendant Randall's Motion to Dismiss, Defendant argues first that Plaintiff's new claims against her should be barred because his previous claims against her were dismissed with prejudice.  It is not clear why this should be so.  Plaintiff did not, before now, bring claims based on Defendant Randall's conduct with respect to her own Facebook page.  Indeed, in dismissing Plaintiff's prior claims against Defendant Randall, the Court expressly noted that the claims Plaintiff now brings were not among those at issue.  *See* Mem. Op. [Dkt. 11] at 18 n.3 ("Defendants also argue at considerable length that Defendant Randall did not violate Plaintiff's First Amendment rights by deleting comments Plaintiff made on her own Facebook page.  But that incident, while mentioned in passing in Plaintiff's Complaint, is neither the subject of this suit, nor

7

particularly relevant to the instant Motion.").  That
Plaintiff's prior claims against Defendant Randall were
dismissed does not bar Plaintiff from bringing tangentially
related claims against her now.

### 2. Failure to State a First Amendment Claim

Defendant Randall next argues that Plaintiff has
failed to plead a violation of his First Amendment rights.

Loudoun County maintains a Social Media Comments
Policy governing "Loudoun County social media sites."  *See*
Compl. Exh. 11 [Dkt. 1-11].  The Court has already found that
Plaintiff has plausibly alleged the Policy, as applied to
official County Facebook pages, creates a limited public forum
under the First Amendment.  *See* Mem. Op. [Dkt. 11] at 16-18.
Indeed, Defendants appeared to concede as much in their first
Motion to Dismiss.  *See* Mem. in Supp. of Mot. to Dismiss [Dkt.
4] at 13-14.  The Attorney for the Commonwealth for Loudoun
County has likewise admitted that the policy serves such a
function in a related case.  *See* Reply in Support of Motion to
Dismiss [Dkt. 10] at 2, *Davison v. Plowman*, No. 1:16-cv-180
(E.D. Va.).

The Court has also previously found that, when County
officials suppress comments in violation of the County's Social
Media Comments Policy, their actions implicate the commenters'
First Amendment rights.  *See* Mem. Op. [Dkt. 11] at 16-18.  "Once

it has opened a limited forum," the government "must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

Defendant does not contend that her actions were consistent with the County's policy. Instead, she denies that the County's policy applies to her Facebook page at all.

In support of this contention, Defendant Randall notes first that she is not individually capable of binding the Loudoun County Board of Supervisors. The significance of that fact eludes the Court. Plaintiff alleges that Defendant Randall is an elected Loudoun County official who uses her Facebook page to conduct County business, such as corresponding with her constituents about her work in the local government. *See* Am. Compl. [Dkt. 33] ¶¶ 5-6. Whether or not Defendant is capable of unilateral action on behalf of the Board, the Loudoun County Social Media Comments Policy can easily be construed to cover such use of social media by an elected County official.

Defendant Randall next contends that she maintains the Facebook page at issue in her personal capacity, and that Plaintiff's allegation that it is her "official" Facebook page is conclusory. Plaintiff, however, has incorporated an image of Defendant Randall's Facebook page into his Complaint. *See* Compl. Exh. 18 [Dkt. 1-18]. Based on that image, one might reasonably – indeed, easily – infer that Defendant Randall

9

maintains the Facebook page at issue in her capacity as Chair of the Loudoun County Board of Supervisors.

The website is not Defendant Randall's personal Facebook profile.  Rather, it is a Facebook "Page" – a public-facing platform through which public figures and organizations may engage with their audience or constituency.  *See* Matt Hicks, *Facebook Tips: What's the Difference between a Facebook Page and Group?*, http://tinyurl.com/jtb5hoa (Feb. 24, 2010) (last visited December 9, 2016); *see also Bland v. Roberts*, 730 F.3d 368, 385 (4th Cir. 2013), *as amended* (Sept. 23, 2013) ("Facebook is an online social network where members develop personalized web profiles to interact and share information with other members," and that can be used by "businesses, organizations and brands . . . for similar purposes.") (citations omitted).  The Court notes that Defendant Randall's page is visible to the general public without the need to first register for a Facebook account.

The page in question is titled "Chair Phyllis J. Randall, Government Official."  *See* Compl. Exh. 18 [Dkt. 1-18]. The "About" section of the page reads "Chair of the Loudoun County Board of Supervisors" and includes a link to Defendant Randall's profile on Loudoun County's website.  *See id.*  It does not include any information of a personal nature.  The top of the page features an image of a plaque reading "Phyllis J.

Randall Chair-At-Large," as well as an image of what the Court presumes to be Defendant Randall sitting behind the same plaque in front of a United States flag. *See id.*

The image appended to Plaintiff's Complaint includes four posts by Defendant Randall. The two most recent are specifically addressed to "Loudoun," Plaintiff's constituency. *See id.* All pertain to matters of public, rather than personal, significance. Besides one warning of poor weather conditions in Loudoun County, all posts visible in the image involve Defendant's duties as Chair of the Loudoun County Board of Supervisors. *See id.* They note recent events in the local government and solicit attendees for local government meetings. *See id.*

In short, the image of Defendant's Facebook page substantiates Plaintiff's claim that Defendant Randall uses the "Chair Phyllis J. Randall, Government Official" Facebook page in connection with her official duties. Drawing "all reasonable inferences" in Plaintiff's favor, *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (4th Cir. 2011), Plaintiff has adequately plead that Defendant Randall's Facebook page is a "Loudoun County social media site[ ]," Compl. Exh. 11 [Dkt. 1-11], governed by the County's Social Media Comments Policy.

The Court notes that many of Defendant's arguments attempt to answer the wrong question. The Court is not required

11

to determine whether *any* use of social media by an elected official creates a limited public forum, although the answer to that question is undoubtedly "no."  Rather, the issue before the Court is whether a specific government policy, applied to a specific government website, can create a "metaphysical" limited public forum for First Amendment purposes.  *See Rosenberger v. Rector*, 515 U.S. at 830.  That answer to that narrower question is undoubtedly "yes."

"Limited public forums are characterized by 'purposeful government action' intended to make the forum 'generally available'" for certain kinds of speech. *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006) (quoting *Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003)).  At the time of the events giving rise to this suit, the County maintained a Policy stating that "the purpose of Loudoun County social media sites is to present matters of public interest in Loudoun County."  Compl. Exh. 11 [Dkt. 1-11].  The Policy provided that visitors were "encourage[d] to submit questions, comments and concerns,"  but that "the county reserve[d] the right to delete submissions" that violated enumerated rules, such as comments that include "vulgar language" or "spam."  *Id*.  Such a policy evinces the County's purposeful choice to open its social media websites to

those wishing to post "questions, comments and concerns" within certain limits.

"[S]ocial networking sites like Facebook have . . . emerged as a hub for sharing information and opinions with one's larger community." *Liverman v. City of Petersburg*, No. 15-2207, __ F.3d __, 2016 WL 7240179, at *4 (4th Cir. Dec. 15, 2016). The Fourth Circuit has recently described Facebook as "a dynamic medium through which users can interact and share news stories or opinions with members of their community" in a manner "[s]imilar to writing a letter to a local newspaper." *Id.* at *5. That Court has repeatedly affirmed the First Amendment significance of social media, holding that speech utilizing Facebook is subject to the same First Amendment protections as any other speech. *See id.*; *Bland*, 730 F.3d at 385-86.

Defendant Randall contends further that the fact Facebook retains a degree of ownership and control over her Facebook page "demonstrates the unique and non-traditional circumstances under which even an acknowledged 'official' Facebook page can be deemed a governmental public forum, limited or otherwise." Mem. in. Supp. of Mot. to Dismiss [Dkt. 36] at 9. But as discussed above, the County has expressly adopted a policy that governs official Loudoun County social media websites. As also discussed above, speech online is treated no differently from speech offline under the First Amendment. *See*

13

*Bland*, 730 F.3d at 386 n.14.  A "metaphysical" forum created by a government policy like the County's social media policy, *see Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995), is subject to the same First Amendment analysis regardless of whether that policy is applied to online speech. *See Liverman*, 2016 WL 7240179, at *3 ("What matters to the First Amendment analysis is not only the medium of the speech, but the scope and content of the restriction.").

Finally, Defendant Randall contends that "[n]o individual has the right to hi-jack an individual's Facebook page by relentlessly posting his or her comments at will, negative or otherwise, or demand that their comments remain posted indefinitely, just because the person is also a County official or employee."  Mem. in. Supp. of Mot. to Dismiss [Dkt. 36] at 9.  This argument both assumes that the Facebook page in question is maintained by Defendant in her individual capacity – an argument the Court has rejected for purposes of the present Motion – and obscures the relatively narrow issue now before the Court.  The Court is only tasked here with determining whether Plaintiff has adequately pled that Defendant Randall's Facebook page is governed by the County's Social Media Comments Policy, and that her actions failed to comport with that policy.  The

Court finds that Plaintiff has adequately plead as much, and so has stated a claim under the First Amendment.[2]

### 3. Failure to State a Due Process Claim

Turning to Plaintiff's claim under the Due Process Clause of the Fourteenth Amendment, Defendant contends first that "[t]he Supreme Court has made a distinction between cases in which there has been prior restraint[ ]" of speech "as opposed to facts such as raised in this case where no such action occurred and the alleged disruption is *de minimis*." Mem. in. Supp. of Mot. to Dismiss [Dkt. 36] at 9. Plaintiff, however, *has* alleged that Defendant imposed a prior restraint on his speech. Moreover, the case Defendant Randall cites – *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 n.14 (1972) – does not recognize a due process exception for "*de minimis*" invasions of First Amendment rights. Rather, the Supreme Court in that case held that no constitutional right was implicated by the facts before the Court. *See id.*

---

[2] The Court emphasizes that it does not now hold the County's Social Media Comments Policy does, in fact, apply to Defendant Randall's Facebook page. Rather, based on the allegations of and exhibits to Plaintiff's Amended Complaint, Plaintiff has plausibly pled that Defendant Randall's Facebook page is subject to that policy. Courts "look[ ] to the policy and practice of the government to ascertain whether it intended to designate a [non-traditional forum] . . . as a public forum." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). The record, at this point, lacks information regarding the practice of the Loudoun County government with respect to its social media policy.

Defendant next contends that due process required only "a post-deprivation opportunity to voice . . . objections," and Plaintiff was afforded that opportunity insofar as he complained of Defendant Randall's actions to other government officials. Rep. in. Supp. of Mot. to Dismiss [Dkt. 36] at 6-7. Regardless of whether a post-deprivation opportunity to be heard would have satisfied Due Process in this instance, no such opportunity was provided Plaintiff. Plaintiff's unilateral complaints to other government officials did not constitute "process" provided him by Loudoun County any more than did Plaintiff's filing of this lawsuit. In short, Defendant's Motion provides no reason to dismiss Plaintiff's Due Process claim.

The Court notes further that Defendant Randall's Reply implies it would be have been impracticable to provide Plaintiff with *any* form of process. Shortly after Defendant Randall filed the instant Motion, however, Loudoun County adopted a new social media policy that employs the following procedure:

> The county's social media platforms are administered by designated staff. When one of the county's social media administrators suspects a violation of the Loudoun County Social Media Comments Policy, he or she will contact the Public Affairs and Communications Division of the Office of the County Administrator, which will review and authorize removal of a comment when appropriate. When appropriate and if possible, a social media administrator will contact the commenter regarding a violation of the county's Social Media Comments Policy

16

> to notify the commenter and/or to request
> voluntary removal of the comment. Appeals
> regarding the Public Affairs and
> Communications Division's decision to remove
> a comment may be submitted via email or
> phone at 703-777-0113; the Public Affairs
> and Communications Division will respond to
> appeals within two business days.

*Loudoun County Social Media Comments Policy*, https://www.
loudoun.gov/index.aspx?NID=2779 (last visited Dec. 22, 2016).
It therefore appears that affording Plaintiff process might not
have been as impracticable as Defendant Randall contends.

### 4. Official Capacity Claims

Defendant next argues that Plaintiff's claims against
her in her official capacity should be dismissed because (1) the
Court dismissed Plaintiff's prior official-capacity claims
against Defendant Randall and (2) the Loudoun County Board of
Supervisors is already a party to this action. As to the former
argument, again, the dismissal of Plaintiff's prior claims
against Defendant Randall has no bearing on Plaintiff's ability
to bring his new claims.

As to the latter argument, Defendant misapprehends the
nature of an official-capacity suit. By suing Defendant in her
official capacity, Plaintiff is bringing "a suit against [her]
office," *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71
(1989), which is to say the office of the Chair of the Loudoun
County Board of Supervisors. That office is distinct from the

Loudoun County Board of Supervisors itself.  And while it is
true that a claim against a government officer in her official
capacity may be dismissed when duplicative of claims against a
larger governmental body already named in the suit, *see
Mainstream Loudoun v. Bd. of Trustees of Loudoun Cty. Library*, 2
F. Supp. 2d 783, 790-91 (E.D. Va. 1998), that is not the case
here.

### 5. Qualified Immunity

Defendant argues further that she is entitled to
qualified immunity with respect to Plaintiff's claims against
her in her individual capacity.

A government official is entitled to qualified
immunity with respect to suits against her in her individual
capacity unless "(1) the allegations underlying the claim, if
true, substantiate the violation of a federal statutory or
constitutional right; and (2) this violation was of a clearly
established right of which a reasonable person would have
known." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d
292, 306 (4th Cir. 2006).  Defendant contends that the law was
not "clearly established" here in light of "the pleaded and
acknowledged control and ownership all Facebook pages by
Facebook, which imposes its own terms and conditions and
possesses licensed software which allows for deletion of

postings or blocking of individuals by third parties as well as Facebook." Mem. in. Supp. of Mot. to Dismiss [Dkt. 36] at 9.

Defendant, however, does not explain the manner in which this left the law unsettled. As discussed above, the Supreme Court has long rejected the proposition that speech online is subject to a different First Amendment standard than speech offline. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 870, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The Fourth Circuit has already applied this principle to speech on Facebook. *See Bland*, 730 F.3d at 385-86; *see also Liverman*, 2016 WL 7240179, at *6-7 (finding a police chief not entitled to qualified immunity for violating a police officer's First Amendment rights in connection with the officer's Facebook comments).

It is equally well established that the government may create a "metaphysical" forum for speech by promulgating a policy like the County's Social Media Comments Policy. *See Rosenberger*, 515 U.S. at 830. These principles in combination would put a reasonable government official on notice that suppressing public comment in violation of that policy would run afoul of the First Amendment – particularly where, as here, Defendant is alleged to have engaged in viewpoint discrimination, something the First Amendment proscribes in virtually all contexts. *See, e.g.*, *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 385-86 (1992). That being so, a reasonable

19

government official would also be on notice that depriving an individual of their First Amendment rights without warning or recourse implicates that individual's Due Process rights.  *See Bd. of Regents of State Colleges*, 408 U.S. at 575 n.14; *see also* Mem. Op. [Dkt. 11] at 19-20.

Finally, Defendant contends that "[t]here is no distinction between the court's finding in favor of the Sheriff on his entitlement to qualified immunity in *Bland* [*v. Roberts*] and [Defendant's] entitlement to qualified immunity in this case."  Rep. in. Supp. of Mot. to Dismiss [Dkt. 36] at 8.  In *Bland*, the Fourth Circuit found that a sheriff who declined to reappoint a deputy in retaliation for the deputy's act of "liking" a political rival's Facebook page was entitled to qualified immunity.  *See* 730 F.3d at 391.  The Court's decision, however, rested entirely on its finding that its prior precedent regarding when sheriffs may discharge deputies "sent very mixed signals."  *Id.*

That precedent has no application here.  In short, Defendant is not entitled to qualified immunity simply because this case involves a relatively new technology.  The Court confines its qualified immunity analysis to the brief argument that Defendant Randall has put forward, and reserves the question of whether Defendant Randall is in fact entitled to qualified immunity on other grounds or on a more fully developed

record.  The Court declines, however, to supply arguments

Defendant Randall has not made.

### III. Conclusion

For the foregoing reasons, the Court will deny both

Plaintiff's Motion for Summary Judgment [Dkt. 39] and

Defendant's Motion to Dismiss [Dkt. 35].

An appropriate order will issue.


|                      | /s/                                   |
| -------------------- | ------------------------------------- |
| January 4, 2017      | James C. Cacheris                     |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE    |