

EXHIBIT 5

# UNITED STATES DISTRICT COURT
## Eastern District of Virginia
### Alexandria Division

| | |
|---|---|
| **BRIAN C. DAVISON**<br><br>Plaintiff,<br><br>v.<br><br>**LOUDOUN COUNTY BOARD OF SUPERVISORS, ET. AL.,**<br><br>Defendants. | Case No.:<br>1:16-CV-932<br>(JCC/IDD) |

## PLAINTIFF BRIAN C DAVISON'S FIRST SET OF INTERROGATORIES TO DEFENDANT RON MEYER

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Brian C. Davison submits the following interrogatories to Defendant Ron Meyer ("Defendant") to be answered within thirty (30) days after service:

## DEFINITIONS AND INSTRUCTIONS

These interrogatories are continuing in nature, so as to require the filing of supplemental answers and responses without further request should additional information, or information inconsistent with the information contained in the answers and responses to these interrogatories, become available to Plaintiff. For purposes of these interrogatories, the following definitions shall apply:

1. "Document" means the original or draft of any kind of written or graphic matter in any medium, however or by whomever produced or reproduced, of any kind or description, whether sent or received or neither, and all copies thereof which are different in any way

from the original (whether by interlineation, receipt stamps, notation, indication of copy set or received or including without limitation, any paper, book, periodical, circular, pamphlet, notice, statement, note pad, diagram, account, photograph, blueprint, drawing, agreement, contract, questionnaire, calendar or diary, memorandum, advertising material, message, letter, email or other electronic communication, postcard, telegram, object, report, record, transcript, study, note, notation, working paper, schedule, intra-office communication, inter-office communication and personal interview, chart, minute, index sheet, computer software, check, check stub, delivery ticket, bill, bill of lading, invoice, data sheet, flow sheet, price list, purchase order, receipt, quotation, bulletin, circular, manual, summary, graph, recording of telephone or other conversation, or of interviews, or of conferences or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which you have or have had access to or of which you have knowledge.

2. "Identify" or "identification" means:

   a. with respect to a person, his name, present or last known home address, present or last known place of employment, present or last known home and business telephone numbers;

   b. with respect to a document, the type of document (e.g., letter, memorandum, record, list, report, chart, etc.), date, identification of the person or persons who prepared the document, identification of the person for whom the document was prepared or to whom it was delivered, and the identification of the present custodian and current location of that document; and

   c. with respect to oral communications, the date, identification of each person involved, the substance thereof and the method of communication (e.g., in person or by telephone).

3. Where knowledge, information, or material in possession of Defendants are required, such request includes knowledge of or material in the possession of Defendant's agents, representatives, employees and unless privileged, attorneys.

4. The terms "you" and "your" shall mean you, the Defendants, and all past and present agents, representatives, and/or attorneys.

5. The term "Amended Complaint" refers to the complaint in this matter including any subsequent amendments.

6. The term "person" means any natural person, firm, association, partnership, corporation, or other form of legal entity, and unless the context indicates otherwise, includes the singular as well as the plural.

7. Any use of the singular shall be deemed to refer also to the plural, and vice versa.

8. "Relate to" and "arise out of" and their cognates mean identifying, evidencing, contradicting, negating, summarizing, commenting upon, referring to, describing, digesting, reporting, listing, analyzing, studying, discussing, constituting, compromising, or resulting from the subject matter identified.

9. The terms "and" and "or" as used herein shall be construed both conjunctively and disjunctively, and each shall include the other whenever such construction will serve to bring within the scope of these Interrogatories that which would not otherwise be brought within their scope.

10. The term "communication" means any oral, graphic, demonstrative, telephonic, verbal, electronic, written, or other conveyance of information, including, but not limited to, conversations, telecommunications, and documents.

## INTERROGATORIES

1. Describe all instances and the content of discussions in which you discussed the deletion of Davison's posts on Loudoun County Government or individual Loudoun Supervisor Facebook pages, either collectively as a body or with other Loudoun officials.

Answer:

2. Describe all instances and the content of discussions in which you discussed Loudoun officials banning citizens from posting on Loudoun County Government or individual Loudoun Supervisor Facebook pages, either collectively as a body or with other Loudoun officials, including:

Answer:

    a. Davison being banned by Loudoun County Commonwealth's Attorney Office Facebook page

Answer:

    b. Meredith Amonson being banned by the Loudoun County Animals Services Facebook page

Answer:

3. Describe all instances and the content of discussions in which you discussed or voted upon the modification of the Loudoun County social media or communications policies in the last two years. If you designate any of these conversations as privileged, provide evidence that all six bases for attorney client privilege are met.

Answer:

4. When did you become aware that private citizens can mark content as spam for deletion by Facebook, including on Loudoun County Facebook pages?

Answer:

5. When did you become aware that private citizens can block other citizens from viewing their comments on a county Facebook page, including not being able to participate in discussion chains with gov't officials under such comments. E.g. Lisa Tilley Svendsen's March 18, 2016 comments under the Loudoun County Animal Services March 18, 2016 Facebook page post on "three little pot bellied pigs"; Mary Russell Tenshaw's Aug 12, 2016 comments under Supervisor Koran Saine's Aug 12, 2016 Facebook page post.

Answer:

6. When did you become aware of Davison's claims that it is unconstitutional for a public body to maintain a Facebook page, open to constituent comments, on which private citizens can censor other citizen's comments and/or block other citizens from participating in

5

discussions on Loudoun County Facebook pages?

Answer:

7. Describe any action you have taken or discussed taking to prevent citizens posting on Loudoun County social media pages from (i) blocking access of other citizens to those comments or (ii) designating other citizens' comments as spam for deletion.

Answer:

8. Describe all other public forums, limited or otherwise, in Loudoun County in which citizens are allowed to block the participation of other citizens. (E.g. are Loudoun citizens allows to commandeer parts of a public park and block others from entering based on viewpoint?)

Answer:

9. Have you read, understood and/or concurred with all of the pleadings submitted by your attorney on your behalf in this case?

Answer:

10. Have you ever deleted comments and/or blocked a Facebook user from your respective Loudoun County Supervisor Facebook page? For the purpose of this question,

6

assume the Facebook page on which you list your title as "Supervisor" and you control as being a "Loudoun County Supervisor Facebook page" even if you do not subscribe to that view.

Answer:

11. List and describe all the Facebook profiles and/or pages that you control or on which you have administrative rights.

Answer:

12. Do you contend that Loudoun County and/or its officials could legally maintain discussion forums on third party websites which actively discriminate based on viewpoint? For example, is it your position Loudoun County could host open discussion forums on a KKKofficials.com or DailyKosOfficials.com website if such websites actively censored based on viewpoint?

Answer:

13. Given your answer to questions #4, #5, #6 and #12, have you considered, discussed or voted upon moving all Loudoun County discussion forums off of Facebook's website to comply with the First Amendment? If not, why not?

Answer:

14. When and how did you become conversant wtih Loudoun County Communications and Social Media policies?

Answer:

15. On the Facebook page that you control and on which you include your title as supervisor, describe any attempts to differentiate your FB page from your Loudoun County office per the Communications and Social Media policies. (E.g. specifying views do not represent your office, refraining from using insignia, etc.)

Answer:

16. Did you open up your Facebookk page referenced in #15 to public comment and, if so, describe any incidents in which you deleted user comments and/or blocked a user from commenting.

Answer:

17. When and how did you become aware of Randall blocking Davison on her Facebook page?

Answer:

18. Have you read, understood and concurred with Loudoun BOS' pleadings regarding Randall having the ability to block any constituent from posting on her Facebook page and/or delete comments based on viewpoint without any chance to appeal?

Answer:

19. Did you or the Loudoun BOS take any action or vote to require individual supervisors with Facebook pages that reference their official position and are open to public comment to comply with the 1st Amendment as a limited public forum?

Answer:

Dated: 27 Jan 2017

Respectfully submitted,

/s/
Brian C. Davison
43724 Stone Fence Ter
Leesburg, Virginia 20176
571.577.8360
bcdavison@hotmail.com