

**EXHIBIT 8**

## UNITED STATES DISTRICT COURT
### Eastern District of Virginia
### Alexandria Division

**BRIAN C. DAVISON**

          Plaintiff,

v.

**LOUDOUN COUNTY BOARD OF SUPERVISORS, ET. AL.,**

          Defendants.

Case No.:
1:16-CV-932
(JCC/IDD)

### PLAINTIFF BRIAN C DAVISON'S FIRST SET OF INTERROGATORIES TO DEFENDANT GLEN BARBOUR

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Brian C. Davison submits the following interrogatories to Defendant Glen Barbour ("Defendant") to be answered within thirty (30) days after service:

### DEFINITIONS AND INSTRUCTIONS

These interrogatories are continuing in nature, so as to require the filing of supplemental answers and responses without further request should additional information, or information inconsistent with the information contained in the answers and responses to these interrogatories, become available to Plaintiff. For purposes of these interrogatories, the following definitions shall apply:

1.    "Document" means the original or draft of any kind of written or graphic matter in any medium, however or by whomever produced or reproduced, of any kind or description, whether sent or received or neither, and all copies thereof which are different in any way

from the original (whether by interlineation, receipt stamps, notation, indication of copy set or received or including without limitation, any paper, book, periodical, circular, pamphlet, notice, statement, note pad, diagram, account, photograph, blueprint, drawing, agreement, contract, questionnaire, calendar or diary, memorandum, advertising material, message, letter, email or other electronic communication, postcard, telegram, object, report, record, transcript, study, note, notation, working paper, schedule, intra-office communication, inter-office communication and personal interview, chart, minute, index sheet, computer software, check, check stub, delivery ticket, bill, bill of lading, invoice, data sheet, flow sheet, price list, purchase order, receipt, quotation, bulletin, circular, manual, summary, graph, recording of telephone or other conversation, or of interviews, or of conferences or any other written, recorded, transcribed, punched, taped, filmed, or graphic matter, however produced or reproduced, which you have or have had access to or of which you have knowledge.

2. "Identify" or "identification" means:

    a. with respect to a person, his name, present or last known home address, present or last known place of employment, present or last known home and business telephone numbers;

    b. with respect to a document, the type of document (e.g., letter, memorandum, record, list, report, chart, etc.), date, identification of the person or persons who prepared the document, identification of the person for whom the document was prepared or to whom it was delivered, and the identification of the present custodian and current location of that document; and

    c. with respect to oral communications, the date, identification of each person involved, the substance thereof and the method of communication (e.g., in person or by telephone).

3. Where knowledge, information, or material in possession of Defendants are required, such request includes knowledge of or material in the possession of Defendant's agents, representatives, employees and unless privileged, attorneys.

4. The terms "you" and "your" shall mean you, the Defendants, and all past and present agents, representatives, and/or attorneys.

5. The term "Amended Complaint" refers to the complaint in this matter including any subsequent amendments.

6. The term "person" means any natural person, firm, association, partnership, corporation, or other form of legal entity, and unless the context indicates otherwise, includes the singular as well as the plural.

7. Any use of the singular shall be deemed to refer also to the plural, and vice versa.

8. "Relate to" and "arise out of" and their cognates mean identifying, evidencing, contradicting, negating, summarizing, commenting upon, referring to, describing, digesting, reporting, listing, analyzing, studying, discussing, constituting, compromising, or resulting from the subject matter identified.

9. The terms "and" and "or" as used herein shall be construed both conjunctively and disjunctively, and each shall include the other whenever such construction will serve to bring within the scope of these Interrogatories that which would not otherwise be brought within their scope.

10. The term "communication" means any oral, graphic, demonstrative, telephonic, verbal, electronic, written, or other conveyance of information, including, but not limited to, conversations, telecommunications, and documents.

## INTERROGATORIES

3

1. Describe the administration of all Loudoun County Facebook pages including who has administrative rights, moderator, or commenting rights on each page.

Answer:

2. Describe all the software tools used to maintain the Loudoun County Facebook pages including who has rights to use such third-party software to control Loudoun County Facebook pages.

Answer:

a. Describe the process by which users' administrative rights are removed as they transition to new positions or leave employment by the county.

Answer:

b. Describe any audits or security reviews conducted to ensure no unauthorized users have access to administer Loudoun County social media pages.

Answer:

3. When and how did you become aware that Davison's comments were deleted from the July 19, 2016 post referenced in the complaint on the Loudoun County Government Facebook page?

4

Answer:

4.  What actions were taken investigate the deletion of those comments?

Answer:

5.  Provide copies of and describe the Activity Log and Spam folder for the Loudoun County Government Facebook page from July 15, 2016 until August 31, 2016.

Answer:

6.  What was your role in blocking Meredith Amonson from posting on the Loudoun County Animal Services Facebook page or any other Loudoun County Facebook pages?

Answer:

   a.  Were you involved in telling Meredith Amonson that she was allowed to post on the LCAS Facebook page even though LCAS maintained a block on her?

Answer:

   b.  What other individuals have been blocked from posting on any of the Loudoun County controlled Facebook pages and over what time frame were they

blocked?

Answer:

7. What was your role in communicating with the Loudoun County Commonwealth's Attorney Office (LCAO) Facebook page that other Loudoun County departments had blocked users based on the content of their speech?

Answer:

8. What information, if any, regarding these deletions and blocks in #3-7 was communicated, and when, to senior county officials and/or elected officials?

Answer:

9. Describe all communications between Loudoun County public information officials and Facebook officials including any emails to gov@fb.com.

Answer:

10. Describe all attempts by Loudoun County officials to obtain logs from Facebook regarding the deleted comments described in #3, #6, and #7.

Answer:

11. Describe all tests performed on Facebook pages conducted to determine what information Facebook records when comments are deleted or marked for spam.

Answer:

12. What evidence, if any, does Loudoun County possess that its officials did not delete the comments described in #3 above? E.g. Records from an activity log that showed the comment was deleted by the actual commenter.

Answer:

13. What was your involvement in the modification of Loudoun County social media and communications policies during the last two years.

Answer:

14. Describe your interaction with Loudoun supervisors, if any, in establishing individual Supervisor Facebook pages including the pages in which officials are "verified" by Facebook and list their county title on the Facebook pages.

Answer:

15. When did you become aware that some comments made on the Loudoun County

7

Facebook pages are hidden from view of other Facebook users who are blocked by the comment authors and that such "blocked" users may not participate in the discussion threads underneath the authors' comments?

Answer:

a. What actions have you taken to discuss this behavior, and possibly recommend solutions that avoid the blocks such as using other discussion forum websites, with Loudoun officials and/or Supervisors?

Answer:

b. What is Loudoun's policy with regard to users hiding comments from other citizens on any of its social media platforms?

Answer:

Dated: 27 Jan 2017                                              Respectfully submitted,

                                                                /s/
                                                                Brian C. Davison
                                                                43724 Stone Fence Ter
                                                                Leesburg, Virginia 20176
                                                                571.577.8360
                                                                bcdavison@hotmail.com