IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BRIAN C. DAVISON,                    )
                                     )
        Plaintiff,                   )
                                     )
        v.                           )        1:16cv932 (JCC/IDD)
                                     )
LOUDOUN COUNTY BOARD OF              )
SUPERVISORS, et al.,                 )
                                     )
        Defendants.                  )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion
for Summary Judgment [Dkt. 96], Plaintiff's Motion for
Reconsideration [Dkt. 88], and Plaintiff's Objection to
Magistrate Judge's Orders [Dkt. 92].  For the following reasons,
the Court will grant Defendants' Motion for Summary Judgment in
part, deny Plaintiff's Motion for Reconsideration, and overrule
Plaintiff's Objection to the Magistrate Judge's Order.

**I. Background**

As this Court has written extensively about the
background of this case in two prior memorandum opinions, it
recites here only the facts germane to the Motions now before
the Court.

Defendant Loudoun County Board of Supervisors ("the
Board") is Loudoun County, Virginia's local governing body.

Compl. [Dkt. 1] ¶ 2; Board Answer [Dkt. 13] ¶ 3.  The Board maintains an official Facebook page.  *See* Dfs. Exh. 1.  The parties agree that the Board's Facebook page is governed by Loudoun County's Social Media Comments Policy, discussed below.  *See* Dfs. Exh. 3A; Dfs. Exh. 3B.

On July 19, 2016, Plaintiff Brian Davison – a resident of Loudoun County – left a comment critical of the Board on one of the Board's Facebook posts.  That comment quickly disappeared.  Upon discovering that his initial comment had vanished, Plaintiff commented again, noting that censorship of his prior comment implicated his First Amendment and Due Process rights.  *See* Compl. Exh. 3 [Dkt. 1-3].  Plaintiff's second comment also disappeared within minutes.  This prompted a third comment in which Plaintiff again invoked his constitutional rights, referenced a lawsuit he had filed based upon similar circumstances, and levied allegations of corruption at the Board.  *See* Compl. Exh. 7 [Dkt. 1-7].  Plaintiff then captured an image of this third comment and posted it along with a fourth comment referencing the possibility of legal action against the Board.  *See* Compl. Exh. 8 [Dkt. 1-8].  Within hours, Plaintiff discovered that his fourth comment had been removed as well.

Assuming that his comments had been removed by the Board or its employees, Plaintiff emailed the Board to report what had happened and ask that his comments be restored.  *See*

Compl. Exhs. 14-18 [Dkts. 1-14, 1-15, 1-16, 1-17].  The

following day, Leo Rogers, County Attorney for Loudoun County,

responded that "no County employee deleted the comments."  Dfs.

Exh. 15.  Mr. Rogers invited Plaintiff to "re-post the comment."

*Id*.

Plaintiff, however, did not believe Mr. Rogers.  *See*

*id*.  When his comments were not restored, Plaintiff filed suit

against the Board, its individual members, and Mr. Rogers.

Plaintiff brought a variety of claims, most of which the Court

dismissed on Defendants' Motion.  *See* Mem. Op. [Dkt. 11].  The

Court permitted Plaintiff to proceed against the Board alone on

the theory that the Board ratified the decision of a subordinate

to remove Plaintiff's comments, and that this violated

Plaintiff's First Amendment and Due Process rights.  *See id*.

Plaintiff would eventually file a Motion for Reconsideration

[Dkt. 88], urging the Court to reverse its dismissal of his

claim under the Virginia Freedom of Information Act.

Shortly after the Court ruled on Defendants' first

Motion to Dismiss, Plaintiff filed an Amended Complaint naming

Phyllis Randall, Chair of the Loudoun County Board of

Supervisors.  *See* Am. Compl. [Dkt. 33].  Defendant Randall

maintains a Facebook page titled "Chair Phyllis J. Randall."

*See* Pl. Exh. 7.  She created this Facebook page herself and

personally controls its content.  Randall Decl. ¶¶ 3-5.

Defendant Randall uses her own personal electronic devices to manage the page, and – unlike the Board – has declined to involve the County's Public Affairs and Communications Office in administering the page. *Id*. ¶¶ 3-4; Barbour Decl. ¶ 21.  The content of Defendant Randall's Facebook page is primarily related to her work as Chair of the Loudoun County Board of Supervisors, although it touches on other matters of interest to residents of Loudoun County.  *See* Pl. Exh. 7.  The Loudoun County Office of Public Affairs and Communications has found that the County's Social Media Comments Policy "does not apply to Board members or their staff."  Barbour Decl. ¶ 21.

The incident giving rise to Plaintiff's Amended Complaint was similar to that prompting Plaintiff's original Complaint.  In short, on February 3, 2017, Plaintiff left a comment critical of the Loudoun County School Board on one of Defendant Randall's Facebook posts.  That evening, Defendant Randall, worried the comment would negatively impact the experience of other persons visiting her Facebook page, deleted her original post and banned Plaintiff from her Facebook page. Randall Decl. ¶ 9.  Defendant Randall reconsidered her decision the following morning and restored Plaintiff's full access to her Facebook page.  *Id.*  Plaintiff's First Amended Complaint claims that Defendant Randall's actions violated his First Amendment and Due Process rights.

On March 13, 2017, the parties stipulated to facts established by information Facebook disclosed in response to Plaintiff's third-party discovery request.  *See* Stipulation [Dkt. 76].  Facebook confirmed that the Board was not responsible for removing Plaintiff's comments as alleged in Plaintiff's Complaint.  Rather, a software error on Facebook's part caused the comments to be erased.

On March 24, 2017, U.S. Magistrate Judge Davis issued an Order granting in part and denying in part Plaintiff's request to file a Third Amended Complaint.  See Order [Dkt. 87]. Judge Davis granted Plaintiff's request insofar as Plaintiff was permitted to add claims arising under the Virginia Constitution against Defendant Randall.  Judge Davis, however, denied Plaintiff's request to add a claim alleging that Loudoun County violates the First Amendment by maintaining a Facebook page given certain technical aspects of the Facebook platform.  Judge Davis' Order further denied Plaintiff's Motion to Compel [Dkt. 72] interrogatory responses from various individuals.  Plaintiff filed an Objection to Judge Davis' Order [Dkt. 92] on March 28, 2017.

## II. Legal Standard

"Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts

are disputed and the moving party is entitled to judgment as a matter of law.'" *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (quoting *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir.2003)). An unresolved issue of fact precludes summary judgment only if it is both "genuine" and "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on that issue. *Id.* at 248. It is material if it "might affect the outcome of the suit under the governing law." *Id.* "In the end, the question posed by a summary judgment motion is whether the evidence 'is so one-sided that one party must prevail as a matter of law.'" *Lee v. Bevington*, 647 F. App'x 275 (4th Cir. 2016) (quoting *Anderson*, 477 U.S. at 252).

The Court is mindful that Plaintiff is proceeding in this matter *pro se*. A "document filed *pro se* is 'to be liberally construed,'" and "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### III. Analysis

#### A. Defendants' Motion for Summary Judgment

As an initial matter, Plaintiff concedes that summary judgment is appropriate with respect to Plaintiff's original

claims against the Board.  The Court permitted Plaintiff to proceed on the theory that the Board ratified a subordinate's decision to remove Plaintiff's comments from the Board's Facebook page.  It is now uncontroverted that the Board did no such thing.  Accordingly, the Court will grant Defendants' Motion with respect to Counts I and II of Plaintiff's Second Amended Complaint.

Plaintiff argues, however, that he has prevailed on his claims against the Board for purposes of 42 U.S.C. § 1988, and so is entitled to attorney's fees.  He contends that because this litigation has resulted in (1) Facebook's reassurance that it will fix its software, and (2) the County's amendment of its Social Media Comments Policy, Plaintiff has "materially altered the relationship of the parties" in his favor.  Opp. [Dkt. 107] at 12.  The Court disagrees.  As an initial matter, a "pro se litigant who is not a lawyer is not entitled to attorney's fees." *Kay v. Ehrler*, 499 U.S. 432, 435 (1991) (emphasis omitted).  Moreover, Plaintiff did not prevail on his claims in any meaningful sense; he brought claims, discovery proved them to be meritless, and the parties stipulated as much.  That distinguishes the case at bar from the case cited by Plaintiff, *Hawaii Defense Foundation v. City of Honolulu*, No. 12-00469 JMS-RLP (D. Haw. Jun. 19, 2014), in which the parties reached a settlement before the Court had an opportunity to address the

merits of the plaintiff's claims.  Moreover, Facebook is not a party to this case against which Plaintiff can claim litigation success, and the changes to the County's policy identified by Plaintiff stem from a different matter involving similar issues. *See Davison v. Plowman*, No. 1:16CV180 (JCC/IDD), 2017 WL 1164480 (E.D. Va. Mar. 28, 2017).[1]  Regardless, Plaintiff has not filed a motion for fees and costs, and so the issue is not properly before the Court.

This leaves Plaintiff's claims against Defendant Randall.  Plaintiff has recently added additional claims against Defendant Randall arising under the free speech and due process provisions of Virginia's Constitution.  These claims are in substance identical to Plaintiff's federal claims.  *See Willis v. City of Virginia Beach*, 90 F. Supp. 3d 597, 607 (E.D. Va. 2015) ("The Supreme Court of Virginia has held that 'Article I, § 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment.'") (quoting *Elliott v. Commonwealth*, 267 Va. 464, 473–74 (2004)); *Shivaee v. Com.*, 270 Va. 112, 119 (2005) ("Because the due process protections afforded under the Constitution of Virginia

_____

[1]     The policy changes in question appear to have been adopted largely at the behest of James Plowman, Commonwealth Attorney for Loudoun County, after Plaintiff sued Mr. Plowman for blocking him from the Commonwealth Attorney's Facebook Page. *See, e.g.*, Trial Tr. [Dkt. 41] at 13, *Davison v. Plowman*, No. 1:16CV180 (JCC/IDD) (E.D. Va. Feb. 27, 2017).

are co-extensive with those of the federal constitution, the same analysis will apply to both.").  Accordingly, Plaintiff's state and federal claims require no separate analysis.

This Court has previously held that Loudoun County's Social Media Comments Policy creates a limited public forum for speech where it applies.  *See, e.g.*, Mem. Op. [Dkt. 57] at 12-13.  "Once it has opened a limited forum," the government "must respect the lawful boundaries it has itself set" or violate the First Amendment.  *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).  Both the Court and Defendant Randall have understood Plaintiff's constitutional claims to rest on the premise that Defendant Randall violated Loudoun County's Social Media Comments Policy, and so violated the First Amendment. *See* Opp. [Dkt. 107] at 15-18.  As the evidence before the Court establishes that this policy does not apply to Defendant Randall's Facebook page, Plaintiff's claims fail to the extent that they rest on this premise.

The Policy in force during the events giving rise to this suit provided that "[t]he purpose of Loudoun County social media sites is to present matters of public interest in Loudoun County."  Dfs. Exh. 3A.  The Policy "encourage[d]" commenters "to submit . . . questions, comments and concerns" through Loudoun County's social media websites, but reserved the County's right to "delete submissions" that violated enumerated

rules – for example, comments that "contain[ed] vulgar language" or "spam." *Id.*

The Policy has since been amended to state that "[t]he purpose of Loudoun County's official social media platforms is to provide information of public interest to the county's residents, business community, visitors and other members of the general public." Dfs. Exh. 3B. It likewise encourages comments while reserving the County's right to remove comments for enumerated reasons. *Id.* It further specifies that the Public Affairs and Communications Division of the Office of the County Administrator is charged with removing comments that violate the Policy. *Id.*

In determining whether these policies apply to Defendant Randall's Facebook page, the question the Court must answer is whether that website constitutes a "Loudoun County social media site" or "official social media platform."[2] While Defendant Randall is Chair of the Loudoun County Board of Supervisors, Plaintiff concedes that the mere fact of her office does not mean the policy applies to any social media website she maintains. *See* Opp. [Dkt. 107] at 17. Indeed, this reading would likely render the Policy facially overbroad, infringing

---

[2] Based on the similarities between the two policies, the Court interprets "Loudoun County social media site" and "official social media platform" as coextensive. In other words, it appears that the new policy at most clarifies rather than modifies the reach of the original policy.

the First Amendment rights of County employees by unduly restricting their social media activity. *See, e.g.*, *Liverman v. City of Petersburg*, 844 F.3d 400, 411 (4th Cir. 2016) (discussing the First Amendment right of public employees with respect to social media usage).

Turning to the evidence before the Court, Defendant Randall has submitted affidavits establishing that she created the Facebook page in question and personally controls its content. Randall Decl. ¶¶ 3-5. Defendant Randall uses her own personal electronic devices to manage the page, and has declined to involve the County's Public Affairs and Communications Office in administering it. *Id.* at ¶¶ 3-4; Barbour Decl. ¶ 21. Finally, the head of the Loudoun County Office of Public Affairs and Communications – which instituted and administers the Policy – has found that the County's Social Media Comments Policy "does not apply" to Defendant Randall's Facebook page. Barbour Decl. ¶ 21.

Plaintiff argues that Summary Judgment must be denied because he disputes a number of the facts discussed above. That, however, is relevant only insofar as Plaintiff *produces evidence* demonstrating that any dispute of fact is both genuine and material. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Anderson*, 477 U.S. at 251-52 (1986). Although Plaintiff is proceeding *pro se* and the Court construes his

filings liberally, Plaintiff may "survive the motion for summary judgment only by adducing specific, non-speculative evidence supporting" the existence of a factual dispute. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003). "[M]ere allegations or denials" without reference to evidence are not sufficient. *Clark v. Metro. Life Ins. Co.*, 369 F. Supp. 2d 770, 774 (E.D. Va. 2005).[3]

Plaintiff has produced no evidence that would create a genuine factual dispute with respect to whether Defendant Randall's Facebook page is governed by the County's Social Media Comments Policy. Indeed, the exhibits to Plaintiff's Opposition *confirm* that Defendant Randall's Facebook page is not subject to that Policy.

In particular, Loudoun County's Use of Social Media Administrative Policies and Procedures, Opp. Exh. 1 [Dkt. 107-1], is instructive as to what constitutes a "Loudoun County social media site" or "official social media platform." This policy makes clear that a Loudoun County social media website is one created through formal processes and adhering to certain

---

[3]      Similarly, to the extent Plaintiff incorporates by reference into his Opposition the "twenty-two (22) facts in his motion for summary judgment filed on November 21, 2016," Opp. [Dkt. 107] at 1, the Court has already explained that such "facts" – which are supported by no more than the allegations of Plaintiff's Amended Complaint – are not properly substantiated for purposes of a motion for summary judgment. *See* Mem. Op. [Dkt. 57] at 6.

rules.  For example, a Loudoun County social media website is created after consultation with, and is partially administered by, the Public Affairs and Communications Division of the Office of the County Administrator.  *See* Dfs. Exh. 3B; Opp. Exh. 1 [Dkt. 107-1] at 4.  It must include certain content, such as the Loudoun County Social Media Comments Policy.  *See* Opp. Exh. 1 [Dkt. 107-1] at 5.  Passwords and other information enabling County access to the website must be made available to both the County's Department of Information Technology and the Public Information Office.  *See id.* at 4-5.  The County's Public Information Office is tasked with coordinating the posts of Loudoun County social media websites to ensure that "consistent messages are being conveyed countywide."  *Id*. at 4.

Defendant Randall did not create her "Chair Phyllis J. Randall" Facebook page through the above procedures and has not observed the above rules in operating her Facebook page. Nothing in the Policy suggests that a Loudoun County social media website may be created or maintained outside of these rules and procedures.[4]

_____

[4]     The Court notes that in a related case, the Defendant conceded that he had independently adopted the Social Media Comments Policy to govern his office's Facebook page. *See Davison v. Plowman*, No. 1:16CV180 (JCC/IDD), 2017 WL 1164480 (E.D. Va. Mar. 28, 2017).  For that reason, the Court was not required to perform the analysis above.

Plaintiff contends that Defendant Randall's Facebook page must nonetheless be a Loudoun County social media website because much of its content relates to Defendant Randall's work for the County. Nothing in the County's Policies, however, indicates that one may unintentionally create a Loudoun County social media website in this manner. The closest provision Plaintiff identifies is paragraph K of Loudoun County's Use of Social Media Administrative Policies and Procedures, which states that "[e]mployees participating on non-county sponsored blogs (or other social media websites) during non-work hours may not make statements that purport to be on behalf of the county government." Opp. Exh. 1 [Dkt. Dkt. 107-1] at 6. Even assuming that Defendant Randall's posts on her Facebook page "purport to be on behalf of the county government," that would mean only that she has violated Loudoun County's Policy using a "non-county sponsored" social media website. Any such violation would not transform Defendant Randall's Facebook page into a Loudoun County social media website subject to the Social Media Comments Policy. To hold otherwise would read much into the County's policies that is simply not there.

Plaintiff also submits Loudoun County's Media Relations Policy and Procedures, Opp. Exh. 2 [Dkt. Dkt. 107-2], and notes that elected County officials are considered "designated spokespersons" by the County. Plaintiff, however,

14

does not explain how this renders Defendant Randall's Facebook page a Loudoun County social media website. With respect to social media websites, this latter Policy simply refers the reader back to the Use of Social Media Policy discussed above. That Defendant Randall may permissibly answer media inquiries on behalf of the County does not mean that she has unwittingly created a Loudoun County social media website under the Policies discussed above.

In short, the only evidence of record before the Court demonstrates that Defendant Randall's Facebook page is not a "Loudoun County social media site" or "official social media platform." Accordingly, the Loudoun County Social Media Comments Policy does not apply to Defendant Randall's Facebook page and Defendant Randall could not have violated that Policy by banning Plaintiff from her Facebook page. To the extent that Plaintiff's claims rest on the proposition that Defendant Randall violated the Policy, they fail.

Plaintiff, however, also maintains that Defendant Randall's Facebook page constitutes a limited public forum separate and apart from the Loudoun County Social Media Comments Policy. Defendant Randall rejoins that she did not open any kind of forum, and that she maintains her Facebook page in her individual, rather than governmental, capacity. The Court finds that material issues of disputed fact preclude summary judgment

for Defendant Randall on these points.  A reasonable finder of fact could determine from the present record that Defendant Randall intentionally opened a limited public forum outside of the Social Media Comments Policy.  Moreover, the record is such that a reasonable finder of fact could determine that Defendant Randall did so in a governmental, rather than private, capacity.

Case law offers some guidance as to when the government opens a limited public forum by creating and maintaining a website.  In *Page v. Lexington County School District One*, 531 F.3d 275, 284 (4th Cir. 2008), for example, the Fourth Circuit found that a school district had *not* opened a public forum by maintaining a website including links to third-party content.  That holding, however, rested on a finding that the school district maintained strict control over the content of its own website, and the Court noted "the issue would, of course, be different" if the website included "a type of 'chat room' or 'bulletin board' in which private viewers could express opinions or post information."  *Id*.  The First Circuit reached a similar conclusion in *Sutliffe v. Epping School District*, 584 F.3d 314, 334–35 (1st Cir. 2009), based on similar facts, noting "there may be cases in which a government entity might open its website to private speech in such a way that" forum analysis would be appropriate.  Both Courts found that the websites at issue constituted platforms for governmental speech rather than

forums.  In a similar vein, the Sixth Circuit found in *Putnam Pit, Inc. v. City of Cookeville, Tennessee*, 221 F.3d 834, 842 (6th Cir. 2000), that a website maintained by the government constituted a nonpublic forum where it included links submitted by third parties which were approved by the government.

In contrast to these cases, Defendant Randall's Facebook page enables private individuals to comment freely without any screening process.  Defendant Randall has permitted "third parties to . . . comment on posts that she posted on the page, allowing her to control the subject matter" under discussion but not the comments' precise content.  Mem. in Supp. of Mot. for Summ. J. [Dkt. 97] at 10.  Defendant Randall also maintains that she generally does not remove comments – apparently even when those comments contradict the message that she herself is attempting to express through her website.  Drawing "all reasonable inferences" in the non-moving party's favor, *Henry*, 652 F.3d at 531, this is sufficient to create a triable issue of fact as to whether Defendant Randall "intentionally open[ed] a nontraditional forum for public discourse."  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985).[5]

---

[5]     Defendant Randall argues that "Facebook makes it almost impossible to view someone's Facebook page, such as Randall's, without creating a Facebook account and becoming a Facebook member," and thus Defendant Randall's Facebook page is

Whether Defendant Randall has maintained her "Chair Phyllis J. Randall" Facebook page in a governmental capacity is different – and perhaps closer – question.  As Plaintiff concedes, the mere fact that Defendant Randall holds public office does not subject every social media account she controls to First Amendment scrutiny.  *See* Opp. [Dkt. 107] at 17.  Moreover, the record before the Court demonstrates that Defendant Randall created the Facebook page at issue personally, controls its content, and has made a significant effort to keep it from entanglement with the County government.

There is, however, also evidence in the record that suggests Defendant Randall's Facebook page is not of an entirely personal nature.  For example, Defendant Randall admits that her Chief of Staff, Jeanine Arnett, has made posts on the "Chair Phyllis J. Randall" Facebook page.  *See* Randall Decl. ¶ 5.  Defendant Randall states that Ms. Arnett has only done so using Defendant Randall's cell phone at events after hours.  *Id.*  But as Plaintiff points out, Ms. Arnett is listed by Facebook as an administrator of Defendant Randall's Facebook page.  *See* Opp.

---

"not freely accessible to members of the public."  Mem. in Supp. of Mot. for Summ. J. [Dkt. 97] at 17.  The Court has already noted, however, that Defendant Randall's Facebook page is in fact easily accessible without a Facebook account.  Moreover, as Facebook accounts are readily available to the general public at no cost, it is difficult to see how the requirement that an individual create such an account renders Defendant Randall's Facebook page "not freely accessible to members of the public."

Exh. 5 [Dkt. 107-5]. This suggests greater involvement by Ms. Arnett in administering Defendant Randall's Facebook page than one might expect from a purely personal page, and raises doubts about Defendant Randall's claim that Ms. Arnett only posts to the "Chair Phyllis J. Randall" Facebook page using Defendant Randall's personal cell phone. Moreover, the record is ambiguous as to the number of times Ms. Arnett has been asked to post to Defendant Randall's Facebook page at events, and whether those events were governmental in nature.

There is also the matter of the manner in which Defendant Randall has used her Facebook page. Plaintiff's arguments throughout this litigation have focused on the content of Defendant Randall's Facebook page, which often touches on Defendant Randall's work as Chair of the Loudoun County Board of Supervisors. *See* Opp. [Dkt. 107] at 17. The Court does not accept that Defendant Randall's discussion of matters related to her work can, by itself, render an otherwise private Facebook page governmental for purposes of the First Amendment. *Cf. Melville v. Town of Adams*, 9 F. Supp. 3d 77, 104 n.11 (D. Mass. 2014) ("It cannot be true, simply by virtue of Plaintiff's position on the Board, that all of her speech regarding 'town business' necessarily equates to 'job-related' speech[.]").[6]

---

[6]     The Court similarly rejects Plaintiff's argument that Defendant Randall's duties include communicating with the people

Regardless, it is true that a number of Defendant Randall's Facebook posts – of which there are surprisingly few in the record – do relate to Defendant Randall's work as Chair of the Loudoun County Board of Supervisors. While some of these appear only to document Defendant Randall's activities, others solicit participation in County initiatives evidently supported by Defendant Randall. A reasonable fact finder might infer from this that Defendant Randall has, in a way, used her Facebook page as a tool of government.

When a social media website may be considered "governmental" for purposes of the First Amendment, notwithstanding that it is controlled privately by a government official, appears to be a novel legal question. There is, to the Court's knowledge, no existing legal framework that can readily supply an answer. One potential test concerns the First Amendment rights of government employees. *See, e.g.*, *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563 (1968). This doctrine recognizes that government employees sometimes speak on behalf of the government, but acknowledges that "a citizen who works for the government is

_____

of Loudoun County and, as Defendant Randall uses her Facebook page for that purpose, she does so pursuant to her official duties. *See* Second Am. Compl. [Dkt. 33] ¶ 5. As Plaintiff concedes, Defendant Randall may make public statements though social media outside of her governmental capacity, *see* Opp. [Dkt. 107] at 17, including to Loudoun County residents.

nonetheless a citizen" entitled to speak individually on matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). Under this framework, the Court would likely construe Defendant Randall's Facebook posts as those of a private citizen, as they were created outside of work and not clearly in the course of her official duties. *See id*. at 421. As other courts have observed, however, this legal framework is an awkward fit where elected officials are concerned, *see Werkheiser v. Pocono Twp.*, 780 F.3d 172, 178-81 (3d Cir. 2015) (discussing cases), and the test addresses an issue that is not precisely the issue before the Court.

There is also the test for "government speech," which asks whether speech is attributable to the government due to the degree of "the government's ownership and control of the message." *Page v. Lexington Cty. Sch. Dist. One*, 531 F.3d 275, 281 (4th Cir. 2008). That test, however, is of little help here. The message of Defendant Randall's Facebook page is controlled by Defendant Randall. There is no question as to whether it is attributable to a government actor. Rather, the issue is whether Defendant Randall acts in a governmental capacity when maintaining her Facebook page.

Another way – perhaps the best way – to put the question is whether Defendant Randall acts under color of state law when operating her Facebook page. "The traditional

definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (U.S. 1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). By this definition, Defendant Randall does not act under color of law in maintaining her Facebook page, as she created and maintains her Facebook page in much the same manner as any private individual.

Courts, however, have found that where a sufficiently close nexus exists between a defendant's ostensibly unofficial conduct and their public office, that conduct arises under color of state law. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). What constitutes a sufficient nexus is largely "'a matter of normative judgment[.]'" *Id.* (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). In making such a judgment, Courts look to the "totality of circumstances." *Id.* at 527 n.1.

As discussed above, there are ambiguities in the record that prevent the Court from assessing the "totality of the circumstances" here. Most saliently, it is unclear the extent to which Defendant Randall has involved her office – and particularly Ms. Arnett – in the maintenance of her Facebook page. There is also the question of what use Defendant Randall

has made of her Facebook page.  As these are material circumstances subject to genuine disputes of fact, the Court is unable to enter summary judgment for Defendant Randall on the issue of whether her Facebook page is personal rather than governmental in nature.

Defendant Randall makes a number of additional arguments, several of which the Court addressed and rejected in ruling on Defendant Randall's earlier Motion to Dismiss, and none of which would avert the need for a trial.  As such, the Court need not address those arguments here.  Defendant Randall argues as well that she is entitled to qualified immunity based on the Court's ruling in *Davison v. Plowman*, No. 1:16CV180 (JCC/IDD), 2017 WL 1164480, at *7 (E.D. Va. Mar. 28, 2017). "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983[.]"  *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006) (quotation marks omitted).  Plaintiff, however, does not seek civil damages.  Rather, Plaintiff seeks only injunctive and declaratory relief against Defendant Randall.  "Claims for declaratory and injunctive relief are not affected by qualified immunity."  *Lefemine v. Wideman*, 672 F.3d 292, 303 (4th Cir. 2012), *rev'd on other grounds*, 568 U.S. 1 (2012); *see also Garcia v. Montgomery Cty., Maryland*, 145 F. Supp. 3d 492, 512

(D. Md. 2015).  Accordingly, whether or not Defendant Randall is entitled to qualified immunity is irrelevant to these proceedings.  The Court declines to issue what would in effect be an advisory opinion on the matter.

In conclusion, the Court notes that the issues left for trial are narrow.  They concern (1) the purpose for which Defendant Randall established her "Chair Phyllis J. Randall" Facebook page and her practices in maintaining it; and (2) the extent to which Defendant Randall has utilized her office's resources in maintaining the "Chair Phyllis J. Randall" Facebook page.  This will not require wide ranging evidence regarding the County's policies, the practices of *other* government officials and persons not directly involved in administering Defendant Randall's website, or any events other the one specific event at issue in this case.  It is not clear whether testimony from persons other than Defendant Randall and Ms. Arnett will aid the Court in resolving these limited factual issues.  The Court expects that trial on these issues will take relatively little time.  The parties are advised to govern themselves accordingly.

**B. Plaintiff's Objection to Magistrate Judge's Order**

Given the purely legal issues under consideration with respect to Plaintiff's motion to amend his complaint, the Court reviews Magistrate Judge Davis' Order *de novo* under Federal Rule

of Civil Procedure 72. *See White v. Chapman*, No. 1:14CV848
JCC/IDD, 2015 WL 4360329, at *2 (E.D. Va. July 14, 2015).

Plaintiff sought and was denied leave to amend his
Complaint to include another claim against the Board.
Plaintiff's proposed Count VII would raise the question of
whether the County violates the First Amendment by maintaining a
limited public forum on Facebook, given certain technical
aspects of the platform.

The Court finds that Judge Davis was correct to deny
Plaintiff leave to amend. Plaintiff's proposed Count VII does
not allege that any County official has improperly restricted
Plaintiff's speech. Rather, Plaintiff contends that *third
parties* have used the Facebook platform in ways that have
limited Plaintiff's ability to view and engage with their
comments on County social media websites. In short, several
individuals have "blocked" Plaintiff on Facebook, which
precludes Plaintiff from viewing their Facebook activity.
Plaintiff believes these individuals are utilizing the County's
social media websites, and that he is deprived of the
opportunity to engage with their comments and any responses.
Plaintiff argues essentially that the County may not maintain a
Facebook page while Plaintiff is unable to view and respond to
every comment posted, and do the same with respect to every
response to the original comment.

The Court is unaware of any precedent suggesting that the First Amendment entitles Plaintiff to participate in every conversation taking place in a limited public forum – even if a private individual has decided that he or she does not wish to engage Plaintiff in conversation. Rather, the First Amendment guarantees freedom from *governmental* censorship. Plaintiff's argument that the County has not sufficiently policed the private conduct of third parties fails to state a claim under the First Amendment. *See, e.g.*, *Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983) ("[T]he Constitution is a charter of negative rather than positive liberties."). The fact that the Facebook platform permits some participants in the County's social media forum to avoid interacting with Plaintiff is not of constitutional dimension. It does not curtail Plaintiff's own right to speak in a meaningful way, and any impact on Plaintiff's speech is not attributable to the government in anything but the most attenuated sense. Simply put, Plaintiff may say whatever he wishes within the bounds of the forum, but other participants need not listen, nor must they include him in their discussions. Permitting Plaintiff to amend his complaint to include this claim would be futile.

Regardless, even if Plaintiff's argument had merit, it comes too late in these proceedings. It would add a new, novel legal theory to the case after the close of discovery, after the

existing claims against the Loudoun County Board of Supervisors have been shown to be meritless, after the point at which Defendants could have addressed the claim in briefing before trial, and on the eve of trial itself.  The addition of the claim at this late date would unduly prejudice Defendants and unnecessarily complicate these proceedings.  For that reason as well, leave to amend must be denied.  *See Deasy v. Hill*, 833 F.2d 38, 40-41 (4th Cir. 1987).

As for Plaintiff's objection to Judge Davis' Order insofar as it denied Plaintiff's Motion to Compel, the Court finds that Judge Davis properly denied that Motion, and finds further that the discovery sought does not appear relevant to any claim remaining in this case in light of the above. Accordingly, the Court will overrule Plaintiff's Objection in its entirety.

### C. Plaintiff's Motion for Reconsideration

Finally, Plaintiff asks that the Court reconsider its earlier ruling dismissing Plaintiff's claim under the Virginia Freedom of Information Act.  While the Court acknowledges that the Motion appears to have some merit, the Court declines to reconsider its earlier ruling.  At this point, the claims that remain in this case are unrelated to Plaintiff's Virginia Freedom of Information Act claim.  The Court has disposed of all related federal claims over which it had original jurisdiction,

and most of the Defendants against whom Plaintiff brought his state law claim are no longer before the Court.  If all federal claims against a defendant are eliminated before trial, it is generally appropriate to refuse to entertain any remaining pendant state law claims.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Declining to exercise pendant jurisdiction over a claim is particularly appropriate where, as here, the claim appears peculiarly committed – arguably exclusively committed, *see* Va. Code § 2.2-3713 – to state courts.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Moreover, at this late date – after the close of discovery and on the eve of trial – entertaining an additional state law claim unrelated to the issues remaining in the case would cause both Defendants and the Court inconvenience, and would fail to serve the interests of judicial economy.  Accordingly, the Court will deny Plaintiff's Motion for Reconsideration.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment [Dkt. 96] in part, deny Plaintiff's Motion for Reconsideration [Dkt. 88], and overrule Plaintiff's Objection to Magistrate Judge's Orders [Dkt. 92].

An appropriate order will issue.

_____
                                                    /s/
May 10, 2017                               James C. Cacheris
Alexandria, Virginia              UNITED STATES DISTRICT COURT JUDGE